

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00428-CV

———————————————

IN THE INTEREST OF B.J., A CHILD

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV23-02-098

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

L.W. (Mother) and C.J. (Father) both appeal the trial court's terminations of their parental rights to their child, B.J., after a jury trial.[1] In this ultra-accelerated appeal,[2] Mother and Father each raise four issues challenging the sufficiency of the evidence supporting the jury's verdict. We will affirm.

## I. BACKGROUND

B.J. is the only child of the marriage of Mother and Father. Mother and Father married in 2016 or 2017. B.J. was born shortly thereafter.

At the time of trial, Mother and Father were in the process of divorcing. Mother has two older children, a daughter and son, from a previous marriage. Mother shares joint custody of those children with their father; neither he nor the children live with her. Father has an adult daughter from a previous relationship who also does not live with him, and whom he did not raise.

Before they married, Father was convicted of the 2012 felony offense of driving while intoxicated with two previous convictions and the 2014 felony offense of evading arrest or detention with a motor vehicle.

---

[1]We refer to the child using aliases and to other family members by their relationship to the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]*See* Tex. R. Jud. Admin. 6.2(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (requiring appellate court to dispose of appeal from judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

In March 2020, Father was arrested for interference with an emergency request for assistance and assault causing bodily injury against Mother and was later convicted of both. The conviction stemmed from an argument between Mother and Father while B.J. was present. According to Mother, Father pulled her hair while she was holding B.J. When she attempted to call 9-1-1, he smashed her cell phone. She then called 9-1-1 from another phone and reported the assault. When questioned about the details of the offense at trial, Father declined to answer, invoking his Fifth Amendment right against self-incrimination.[3]

## A.  2020 REMOVAL AND TERMINATION CASE

In October 2020, when B.J. was two years old, the Department of Family and Protective Services removed him from Father and Mother's home and placed him with Foster Mother. DFPS removed B.J. after Mother tested positive during a relapse of an unspecified controlled substance.

The court ordered a monitored return in August 2021. B.J. primarily lived with Mother, and Father had supervised visitation. During one such supervised visit with Father in the fall of 2021, B.J. got access to a bag containing Father's prescriptions while riding in Father's truck. B.J. was hospitalized after consuming Father's Xanax.

---

[3]When a party in a civil case, including a termination-of-parental-rights case, pleads the Fifth Amendment, the factfinder may draw an adverse inference against him from that invocation. *See In re A.H.*, No. 02-17-00222-CV, 2017 WL 5180785, at *4 (Tex. App.—Fort Worth Nov. 9, 2017, pet. denied) (per curiam) (mem. op.).

Mother and Father substantially completed court-ordered services sufficient for B.J.'s return, including completion of court-ordered substance abuse treatment programs. After approximately a year of monitored return, the trial court dismissed the suit in April 2022.

By the terms of the court's order, Father was to continue with additional counseling and classes and Mother was to give Father additional access to B.J. as he completed court-ordered benchmarks. Because Mother worried that Father continued to abuse illegal substances, she required all his visits to be supervised by B.J.'s paternal grandparents at their house. Father and Mother began the process of divorcing and no longer lived together shortly after the return.

## B. CURRENT REMOVAL AND TERMINATION CASE

In February 2023, Father used methamphetamine while in Houston, and Mother relapsed on methamphetamine. Mother left B.J. with father and admitted herself into a hospital to address her methamphetamine relapse.[4] DFPS filed a petition to remove B.J. and requested and received an order for protection of a child, removing B.J. from Father and Mother's care. DFPS placed B.J. with Foster Mother in the same foster home as his previous removal.

---

[4]Whether B.J. was in Mother's care when she used methamphetamine is unclear from the record. Mother testified at trial that she relapsed for three days before leaving B.J. with Father. She testified both that she left B.J. with Father because she had relapsed on methamphetamine and also that B.J. was with Father while she was using methamphetamine.

Father tested positive for methamphetamine in February and March 2023. At trial, Father claimed the date of his last use was September 29, 2023.

In August 2023, a grand jury indicted Father for two counts of assault causing bodily injury, alleged to have occurred earlier that month, against Mother and her older son from a previous marriage. Father later characterized the incident as having been caused by Mother's relationship with another man, and the indictment as a betrayal of Father by Mother and her older child. Father asserted his Fifth Amendment right and declined to testify further about the incident.

As a result of the prosecution, Father worked extra hours to pay for his attorney. In order to have time to work extra hours, Father missed visitation with B.J. from December 2023 until June 2024.

In September 2023, Mother was arrested for driving while intoxicated while in possession of an open container and was placed on eighteen months' probation. *See* Tex. Penal Code Ann. § 49.04(c). She completed a second intensive outpatient substance abuse treatment program during the period of her probation.

DFPS's plan for B.J. was a monitored return, much the same way the previous case ended, with a target date in May 2024. In May, a drug test of Mother's hair follicle showed the presence of cocaine. When asked about the positive drug test at the time, Mother informed the permanency specialist that she had no idea how she could have tested positive for cocaine, as it was not her drug of choice. Testifying later at trial, Mother stated that she found cocaine among her older son's possessions

5

while moving him out of the house because he refused to submit to drug tests. She testified, "I'm a drug addict. That's what happens. I found it. It was in my hand, and I used it one time and then I threw it out."

Rather than a monitored return, the case went to a jury trial on the merits in August 2024. After the trial, based upon the jury's findings, the trial court issued an order terminating Mother's and Father's parental rights as to B.J. Mother filed a notice of appeal and a motion for new trial. Father filed only a notice of appeal.

## II. SUFFICIENCY CHALLENGES

### A. PRESERVATION OF SUFFICIENCY ARGUMENTS

On appeal, Father and Mother allege that the evidence supporting the jury's findings is both legally and factually insufficient. DFPS alleges that Father failed to preserve his issues as to either legal or factual sufficiency, and so waived both.

To preserve a challenge to the factual sufficiency of the evidence supporting a jury finding, the party must file a motion for new trial in the trial court. Tex. R. Civ. P. 324(b)(2), (3); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *In re A.S.*, No. 02-23-00160-CV, 2023 WL 4779826, at *5 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.).

Mother filed a motion for new trial in the trial court. Father did not, as he acknowledges in his brief.

Because Father did not file a motion for new trial, he has waived any argument challenging the factual sufficiency of the evidence supporting the jury's verdict on

6

appeal. *See A.S.*, 2023 WL 4779826, at *5 (holding that failure to file a motion for new trial waives factual sufficiency claims); *In re C.E.M.*, 64 S.W.3d 425, 427–28 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding that sufficiency issues must be properly preserved in a termination of parental rights case just as in any other civil case).

However, both Mother and Father preserved objections to legal sufficiency. To preserve a challenge to the legal sufficiency of the evidence supporting a jury finding, a party must do one of the following: (1) file a motion for instructed verdict; (2) object to the submission of a jury question; (3) file a motion for judgment notwithstanding the verdict; or (4) file a motion for new trial. *Cecil*, 804 S.W.2d at 510–11; *In re J.V.*, No. 02-15-00036-CV, 2015 WL 4148500, at *2 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.).

After DFPS concluded its case-in-chief, Mother moved for directed verdict as to grounds (D), (E), and (P), and as to B.J.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b). Father joined in the motion and additionally moved for directed verdict as to abandonment. *See Id.* Neither party objected to ground (O), failure to comply with provisions of a court order establishing actions necessary for the parent to obtain return of the child. *See Id.*, § 161.001(b)(1)(O). The trial court granted the motion in part and denied it in part. The parties had no objections to the jury charge as proposed or to the charge submitted to the jury. Neither party filed a motion for judgment notwithstanding the verdict. *See J.V.*, 2015 WL 4148500, at *2.

7

We conclude that Mother's and Father's joint motion for directed verdict as to grounds (D), (E), and (P) and as to the best interest of B.J. preserved their legal sufficiency challenges to these issues. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## B. STANDARDS OF REVIEW

For a trial court to terminate a parent–child relationship, the party seeking termination—in this case DFPS—must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one termination ground listed in Texas Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). The factfinder may draw inferences, but they must be reasonable and logical. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard

8

contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In determining factual sufficiency of the evidence supporting termination of the parent–child relationship, we must perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that DFPS proved the alleged termination ground and that termination of the parent–child relationship would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

If the evidence is factually sufficient, then it is necessarily legally sufficient as well. *In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.).

## C. APPLICABLE LAW

### 1. Endangerment

The trial court terminated Mother's and Father's parental rights under grounds (D) and (E). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). Separately as to each

9

party, we may conduct a consolidated review of findings related to (D) and (E) grounds when the evidence pertaining to both grounds is interrelated, as it is here. *See In re A.B.-G.*, No. 02-19-00066-CV, 2019 WL 3755770, at *8 (Tex. App.—Fort Worth Aug. 8, 2019, pet denied) (mem. op.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

Under termination ground (D), we examine evidence related to the child's environment to determine if that environment endangered his physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). A parent's conduct in the home, including abusive or violent conduct, can create an environment endangering the child's physical and emotional well-being. *Id.* The relevant timeframe under termination ground (D) is endangerment to the child that occurred before he was removed from the parent's care. *In re P.W.*, No. 02-24-00211-CV, 2024 WL 4293564, at *7 (Tex. App.—Fort Worth Sept. 26, 2024, no pet.) (mem. op.).

Under termination ground (E), we ask whether evidence exists that the parent's conduct—including acts, omissions, or failures to act—endangered the child's physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125. Additionally, termination ground (E) requires not just a single act or omission but rather a voluntary, deliberate, and conscious course of conduct. *Id.* The conduct may occur before or after the child has been removed from the parent's care, and it is not limited to the time before

10

removal.  *In re O.S.*, No. 02-24-00295-CV, 2024 WL 4778360, at *8 (Tex. App.—Fort Worth Nov. 14, 2024, pet. denied) (mem. op.).

Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," it does not require that there be conduct directed at the child or that the child actually suffer injury.  *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022).  Evidence that a person has engaged in abusive and violent conduct in the past permits an inference that the person will continue to engage in violent behavior in the future.  *In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.).  Use of drugs and alcohol and their effects on a parent's life and ability to parent may be endangering.  *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).  A child's positive drug test or ingestion of a controlled substance may be evidence of endangering conduct.  *See In re J.S.*, 675 S.W.3d 120, 129 (Tex. App.—Dallas 2023, no pet.).  Likewise, a parent's mental state and failure to seek mental-health treatment may be considered in determining whether a child is endangered if the parent's mental state demonstrates an inability to provide the child with a safe and stable environment.  *M.D.M.*, 579 S.W.3d at 744; *see In re K.G.*, 350 S.W.3d 338, 355 (Tex. App.—Fort Worth 2011, pet. denied).

## 2.  Best Interest

With proof of one or more of the grounds for termination, the trial court may order termination of the parent–child relationship only if the factfinder also finds by

clear and convincing evidence that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(2).

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence of the following nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;
- the child's emotional and physical needs now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the child's best interest;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and
- the parent's excuse, if any, for the acts or omissions.

12

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

### D. SUFFICIENCY OF THE EVIDENCE AS TO MOTHER'S GROUNDS (D) AND (E)

The following evidence establishes that the jury's findings as to the (D) and (E) grounds pertaining to Mother were supported by legally sufficient evidence:

- In August 2020, Father was convicted of interfering with an emergency call that Mother was attempting to place and of assaulting Mother and causing bodily injury in the same incident. B.J. was present during this incident. Mother was the complaining witness.

- In 2023, Father was indicted for an incident in which he was alleged to have caused injury to Mother and to her older child from a previous relationship by striking them with his hands. At the time of trial, Father was under indictment for family-violence assault against Mother. The incident appears to have been related to Father's objection to "what kind of man [Mother] has already been trying to fall in love with[.]"

- At trial, Mother testified that she intended to continue co-parenting with Father but did not articulate a plan to avoid future domestic violence.

13

- In 2021, while under Father's care during a supervised visit, B.J. ingested Xanax and was hospitalized. Mother was aware of the incident after the fact.

- In February 2023, Mother relapsed on methamphetamine and left B.J. with Father, unsupervised. Father also relapsed, but took over as B.J.'s caregiver. Mother could not tell that Father had relapsed when she gave over care of B.J. to him, although she stated that she had ongoing suspicions that Father continued to abuse controlled substances.

- In September 2023, Mother was arrested for driving while intoxicated and placed on eighteen months' deferred adjudication. This conviction came after she had completed a substance abuse treatment program.

- Mother has been diagnosed with depression and anxiety. When Mother left B.J. with Father in 2021, she first claimed she was having a mental health crisis, but she later claimed that her depression was caused by her relapse on methamphetamine. Mother told her permanency specialist that she was diagnosed with depression, had taken medication on an "as needed" basis, and had ceased taking her medication. This concerned her permanency specialist because Mother had informed the specialist that mental health was one of her triggers for relapse.

- In 2024, DFPS was preparing to return B.J. to Mother for a monitor-to-return, in order to end the removal and return B.J. to his parents' care. B.J. had one visit with Mother in preparation for the return. However, when Mother tested positive for cocaine shortly thereafter, DFPS stopped the return process. Mother claimed that she found the cocaine in her home, among her older child's personal effects when he was moving out, and that, seeing it, she used it.

Considering only the evidence favorable to the finding if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that legally sufficient evidence supported the jury's finding as to grounds (D) and (E) as to Mother.

Because legally sufficient evidence supported the jury's findings, we next consider the entire record to determine whether the findings were supported by

14

factually sufficient evidence. *A.B.*, 437 S.W.3d at 500. In addition to the above, we consider the following evidence which weighs against the jury's findings as to (D) and (E) grounds:

- As part of her service plan, Mother completed classes on healthy communication and conflict resolution, a parenting course, and trauma therapy and counseling.

- At the time of trial, Mother maintained an apartment with a room for B.J. DFPS raised only one safety concern after visiting the apartment, that she kept medication in a spot accessible to B.J. Mother remedied this issue when she was informed of it.

- Mother testified at trial that she was not aware that Father was using drugs when she left B.J. in his care.

Based on the entire record, we hold that the jury could have reasonably formed a firm conviction or belief that Mother had knowingly placed or allowed B.J. to remain in conditions or surroundings which endangered his physical or emotional well-being and that Mother had engaged in conduct or placed B.J. with persons who engaged in conduct which endangered his physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *C.H.*, 89 S.W.3d at 28; *In re A.P.*, No. 02-22-00180-CV, 2022 WL 16646478, at *2 (Tex. App.—Fort Worth Nov. 3, 2022, no pet.) (mem. op.); *In re B.K.*, No. 02-21-00175-CV, 2021 WL 5848769, at *8 (Tex. App.—Fort Worth Dec. 9, 2021, pet. denied) (mem. op.). We hold that both legally and factually sufficient evidence supported the jury's finding as to grounds (D) and (E) and overrule Mother's first and second issues.

**E. SUFFICIENCY OF THE EVIDENCE AS TO FATHER'S GROUNDS (D) AND (E)**

The following evidence establishes that the jury's findings as to grounds (D) and (E) pertaining to Father were supported by legally sufficient evidence:

- In August 2020, Father was convicted of interfering with an emergency call Mother was attempting to make, and of assaulting Mother and causing bodily injury in the same incident. B.J. was present at the time. Father testified at trial that he did not remember the incident, but he asserted his Fifth Amendment right against self-incrimination when asked about the details of the conviction, his sentence, and whether Mother was the complaining witness in the case.

- In February 2023, Mother relapsed on methamphetamine and left B.J. with Father. Father had also relapsed but took over as caregiver for B.J. even though he was not sober. Mother could not tell that Father had relapsed when she gave over care of B.J., although she had ongoing concerns about Father's continued, suspected drug abuse.

- During the first removal, Father completed a batterers intervention prevention program. Two months before the jury trial, Father completed a conflict resolution, domestic violence, and parenting class. Asked about his plan to avoid future domestic violence with Mother, Father testified, "[W]ithout going into detail about it, I mean, it just – there is no problems between me and [Mother's] co-parenting."

- In 2021, while under Father's care during a supervised visit, B.J. ingested Xanax and was hospitalized when Father left B.J. unsupervised in the back of his truck near a bag of medications. At the time, Father was taking Xanax for depression.

- In 2023, Father was indicted for an incident in which he was alleged to have caused injury to Mother and to her older child from a previous relationship by striking them with his hands. At the time of trial, Father remained under indictment for family-violence assault against Mother.

- Father stated that he last used a controlled substance on September 29, 2023, and that he failed a hair follicle test in October 2023. Prior to that date, Father tested positive for methamphetamine in February 2023. During that period, Father was B.J.'s caregiver for at least some of the time.

16

- Father has been diagnosed with anxiety, depression, and bipolar disorder, although of the three, he has taken medication only for depression. The DFPS permanency specialist testified that Father told her he did not believe he had bipolar disorder, and so he was not taking medication for it. The specialist also testified that the diagnoses for depression and bipolar disorder were made while Father was using controlled substances, which may have affected the results of the testing. Father testified at trial that he did have bipolar disorder and that he was treating his mental health issues by applying things he had learned, such as breathing exercises.

Having considered the evidence favorable to the jury's finding that a reasonable jury could consider, and disregarding contrary evidence unless a reasonable jury could not, we hold that the jury could have reasonably formed a firm conviction or belief that Father had knowingly placed or allowed B.J. to remain in conditions or surroundings which endangered B.J.'s physical or emotional well-being, and that Father had engaged in conduct or placed B.J. with persons who engaged in conduct which endangered B.J.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *C.H.*, 89 S.W.3d at 28; *In re M.R.*, No. 02-22-00118-CV, 2022 WL 4545534, at *3 (Tex. App.—Fort Worth Sept. 29, 2022, no pet.) (mem. op.); *B.K.*, 2021 WL 5848769, at *5. We hold legally sufficient evidence supported the jury's finding as to grounds (D) and (E) as to Father and overrule Father's first issue.

## F. MOTHER'S AND FATHER'S REMAINING TERMINATION GROUND ISSUES

In her third issue, Mother challenges the jury's finding as to ground (P). In his second and third issues, Father challenges the jury's findings as to grounds (O) and (P). Because only one ground is necessary for termination, if multiple predicate

17

grounds are found by a jury, we may affirm on any one ground. *A.V.*, 113 S.W.3d at 362. Because sufficient evidence supports at least one predicate ground for each parent, we may affirm the verdict without considering their remaining challenges related to other predicate grounds. *Id.*; *see* Tex. Fam. Code Ann. § 161.001(b).

## G. SUFFICIENCY OF THE EVIDENCE AS TO B.J.'S BEST INTEREST

In our best-interest sufficiency analysis, we will recount the evidence relevant to each of the *Holley* factors, but we will combine them topically for ease of discussion.

1. **The emotional and physical danger to the child now and in the future; acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and any excuse for the acts or omissions**

   - B.J. was present during at least one, and perhaps more, incidents of domestic violence between Mother and Father.

   - Mother testified that she is an addict, and that relapses are part of the recovery process. Mother demonstrated a history of abuse of illegal substances.

   - Father testified that he is an addict and always will be one. Father testified that he understood that relapse into addiction "can always happen again." Father demonstrated a history of abuse of illegal substances.

   - B.J. was subsequently hospitalized after ingesting father's Xanax during a visit with Father that was to have been supervised by B.J.'s paternal grandparents. B.J. consumed the Xanax when he was left unsupervised in the back seat of Father's truck.

2. **The child's desires and emotional and physical needs now and in the future**

   - B.J. was too young at the time of trial to communicate his desires. This factor is considered neutral. *See In re C.W.*, No. 02-23-00414-CV,

2024 WL 637264, at *9 (Tex. App.—Fort Worth Feb. 15, 2024, pet. denied) (mem. op.).

- Foster Mother has provided a stable home environment for B.J. for the duration of his removal. B.J. has been in the legal custody of DFPS for more than half his life, and, according to Father, has spent more time with Foster Mother than with Father and Mother. By all accounts, Foster Mother has provided for B.J.'s needs, and, according to Father, she has "paved a way for [B.J.'s] future, as far as what he's going to need."

- At the time of trial, B.J. was about to enter kindergarten and had no educational delays.

- B.J. is bonded with Foster Mother. B.J. receives play therapy in his foster placement.

- At the beginning of his removal, B.J. was quick to anger and would have outbursts when corrected or told "no." Since his foster placement, he has been better able to process correction, and, according to his permanency specialist, "The short fuse . . . had grown quite longer."

- Mother loves B.J., and her visits to him were happy. B.J. is bonded to Mother and Father.

- Father missed approximately six months of visitation with B.J. because he was working additional hours to pay for his criminal defense attorney, in violation of his court-ordered visitation schedule.

3. **The Department's plans and the stability of the proposed home or placement**

- B.J. has been living in the foster home for the entirety of the current removal case and for almost the entirety of the prior case. Foster Mother has expressed interest in adopting B.J.

- The permanency specialist testified that she was concerned that the same patterns of behavior, uncorrected, would necessitate a third removal if B.J. were returned, which would be detrimental to B.J.'s emotional needs and stability.

19

**4. The stability of the home; the parents' parental abilities; any programs available to assist the parents in promoting the child's best interest; and the parents' plans**

- Mother and Father were in the process of divorcing during the trial. At that time, they had not lived together for almost two years.

- Mother testified that she felt she and Father would be able to co-parent B.J. Father stated that the divorce would create no issues with co-parenting. Without going into detail, he felt that his indictment for allegedly assaulting Mother would create no problems.

- B.J. is bonded with Mother and Father and misses them.

- The permanency specialist on the case expressed concerns about the history of domestic violence between Mother and Father, the ongoing mental health concerns, their inability to maintain long-term sobriety, and Mother leaving B.J. with Father when Father "was not sober."

- When Mother relapsed, she sought in-patient treatment, although she first made the poor decision to leave B.J. with Father, who was not sober. Although he knew he was not sober, Father accepted care of B.J.

- In the previous removal, when B.J. was returned to Mother, Father had not completed all services required, and so he was allowed only limited, supervised visitation.

- Mother testified that, if B.J. were returned to her, she would enroll him in school close to her apartment. Mother works out of her home and states that she has a support system if she needs help.

- Mother completed her service plan, which included creating a relapse plan and demonstrating a stable home environment and employment. Mother completed counseling, a psychiatric evaluation, and classes on parenting and domestic violence awareness for victims. She completed intensive outpatient drug treatment programs, one for this case and another during her probation for driving while intoxicated, and she passed drug tests until she tested positive for cocaine.

- Mother is employed and maintains an apartment. She has admitted that she is a drug addict, although, in her brief, Mother argues, she

20

does not have "the unstable lifestyle typical of a drug-addicted parent."

- Father's progress on his service plan in this case was made within the last two or three months of the pendency of the case. Father completed two classes and showed partial attendance at several AA meetings, although he never attended a full meeting. Father has obtained an AA sponsor. Father claims that he will rely on his church to support him in his recovery. B.J.'s paternal grandfather testified that Father had "started the last couple of weeks going back to church" with him, although he expressed doubt as to the efficacy of Father's efforts.

- Father has been convicted of misdemeanor family violence assault and was under indictment for a second family violence offense. Father has at least two prior felony convictions.

- Father testified at trial that he was unemployed. Father has a home, with a room for B.J., and, on the suggestion of DFPS, he has designated a safe place for medicine out of the reach of children.

We acknowledge that not all the trial evidence favors DFPS's petition. However, based on our consideration of the entire record in light of the *Holley* factors, we hold that the evidence was sufficient for the jury to have reasonably formed the firm conviction or belief that termination of Mother's parental rights was in B.J.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *C.H.*, 89 S.W.3d at 28; *B.K.*, 2021 WL 5848769, at *8.

Additionally, considering the evidence favorable to the jury's finding that a reasonable jury could consider and disregarding contrary evidence unless a reasonable jury could not, we hold that the jury could have reasonably formed the firm conviction or belief that termination of Father's parental rights was in B.J.'s best

interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *C.H.*, 89 S.W.3d at 28; *A.P.*, 2022 WL 16646478, at *10.

We hold that legally and factually sufficient evidence supported the jury's finding as to B.J.'s best interest and overrule Mother's and Father's fourth issues.

### III.  CONCLUSION

Having overruled Mother's first, second, and fourth issues, and having overruled Father's first and fourth issues, these being dispositive of their appeals, we affirm the trial court's order terminating Mother's and Father's parental rights to B.J.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 27, 2025